Don Stevens (#004265)
**Law Office of Don Stevens P.C.**
15433 N. Tatum Blvd. Suite 106
Phoenix, AZ 85032
don@donstevenslaw.com
Phone: 602-573-7652
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Oil Holdings, LLC, an Arizona Limited Liability Company; Gilbert Oil, LLC, an Arizona Limited Liability Company; Globoil, LLC, an Arizona Limited Liability Company; Prescott Oil, LLC, an Arizona Limited Liability Company; Sedona Oil, LLC, an Arizona Limited Liability Company; So Mesa Oil, LLC, an Arizona Limited Liability Company; Peoria Oil, LLC, an Arizona Limited Liability Company; Russell Scaramella, an Arizona resident; and Delery Guillory, an Arizona resident.<br><br>Plaintiffs,<br><br>vs.<br><br>BP West Coast Products, LLC., a Delaware Limited Liability Company, and BP Products North America, Inc., a Maryland Corporation;<br><br>Defendants | CASE NO.:<br><br>**COMPLAINT** |

Plaintiffs, for their Complaint against the Defendants, and each of them allege as follows:

**PARTIES**

1. Arizona Oil Holdings, LLC ("AOH") is an Arizona Limited Liability

Company, doing business in the State of Arizona. Arizona Oil Holdings, LLC is a member of each of the individually named Plaintiff Limited Liability Companies.

2. Gilbert Oil, LLC, is an Arizona Limited Liability Company, doing business in the State of Arizona.

3. Globoil, LLC, is an Arizona Limited Liability Company, doing business in the State of Arizona.

4. Prescott Oil, LLC, is an Arizona Limited Liability Company, doing business in the State of Arizona.

5. Sedona Oil, LLC, is an Arizona Limited Liability Company, doing business in the State of Arizona.

6. So Mesa Oil, LLC, is an Arizona Limited Liability Company, doing business in the State of Arizona.

7. Peoria Oil, LLC, is an Arizona Limited Liability Company, doing business in the State of Arizona.

8. Russell Scaramella ("Scaramella") is a resident of the State of Arizona and the Managing Member of each of the Plaintiffs in Arizona. Russell Scaramella is a member of AOH and has a direct financial interest in each of the Arizona Plaintiff LLCs.

9. Delery Guillory ("Guillory") is a resident of the State of Arizona. Delery Guillory is a member of AOH and has a beneficial interest in AOH and a direct financial interest in each of the Arizona Plaintiff LLCs.

10. BP West Coast Products LLC, ("BPWCP") is a Delaware Limited Liability Company doing business in the State of Arizona as a franchisor of *am/pm* franchises in Arizona, as defined in 28 U.S.C. §2801(3), and doing business in Arizona under various written contracts that the Plaintiffs entered into with BPWCP.

11. BP Products North America, Inc. ("BPPNA") is a Maryland corporation, acting as a franchisor, as defined in 28 U.S.C §2801 (3), and/or a distributor, as defined in 28 U.S.C. §2801(6) and/or a down-stream oil company, doing business in Arizona under various written contracts that the Plaintiffs entered into with BPPNA.

## JURISDICTION

12. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

13. This Court has jurisdiction by virtue of diversity of citizenship, pursuant to 28 U.S.C. § 1332(a).

14. Upon information and belief, Plaintiffs allege that at all material times, BPWCP and/or BPPNA established and maintained corporate business policies and control over pricing gasoline products for sale to Plaintiffs in Arizona.

15. BPWCP and BPPNA did business in Arizona through the administration, supervision, management, and control over BP franchisees in Arizona and the sales of goods, gasoline, and services in Arizona.

16. BPWCP has caused events to occur in Arizona out of which Plaintiffs' claims arose. BPWCP is subject to this Court's jurisdiction.

17. BPPNA caused events to occur in Arizona out of which Plaintiffs' claims arose. BPPNA is subject to this Court's jurisdiction.

18. This Court has jurisdiction for the claims alleged by Plaintiffs under the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807, as amended ("PMPA").

**BUSINESS RELATIONSHIPS BETWEEN THE PARTIES**

19. BPWCP sold franchises to Plaintiffs for operation of *ampm* brand convenience stores and gasoline stations in Arizona.

20. The franchises sold to Plaintiffs allowed each Plaintiff LLC to operate an *ampm* Mini market, (a retail convenience store identified by the service mark and service name *ampm*), for the sale of prepackaged foods and fast foods, beverages, sundries and convenience store goods and services.

21. Each of the Plaintiff LLCs was a party to various contracts with BPWCP, including separate Mini Market Franchise Agreements, Contract Dealer Gasoline Agreements, and various related Agreements (collectively "Franchise Agreements."), for the operation of *am/pm* Mini Markets and ARCO-branded gasoline stations in Arizona.

22. Plaintiffs were required to enter into Contract Dealer Gasoline Agreements with BPWCP to operate gasoline stations selling gasoline products manufactured, distributed and sold exclusively by BP at the franchise locations operated by the Plaintiffs, some of which were under the *am/pm* brand trademark, as defined by 15 U.S.C. §2801(11).

23. At all material times, the Plaintiffs were franchisees of BPWCP, as

defined by 15 U.S.C. §2801(4).

24. At all material times, the Plaintiffs were the owners of franchises, as defined by 15 U.S.C. §2801(A) and (B).

25. For each store operated under the terms of the agreements between the parties, Plaintiffs were required to pay royalty and advertising fees to BPWCP and to pay BPPNA for franchise support supplied by the BP Business Service Center.

26. Upon information and belief, Plaintiffs allege that both BPWCP and BPPNA were involved in the management and control of Plaintiffs' franchises and participated in decisions affecting Plaintiffs' franchise operations. The extent to which the acts and omissions alleged herein were caused by BPWCP, BPPNA or others is not known to Plaintiffs at this time.

27. For each store operated under the terms of the agreements between the parties, Plaintiffs was required to purchase a point of sale system called Retalix from BPWCP.

28. BPWCP and BPPNA are "distributors" of motor vehicle fuel, as defined in 15 U.S.C. §2801(6).

29. BPWCP, and BPPNA are subject to the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807, as amended, as defined in 15 U.S.C. §2801(3), (6).

30. BPWCP and/or BPPNA exercised actual and/or constructive control over the supply, marketing, and wholesale pricing of gasoline and retail products sold to Plaintiffs for resale to the public by adopting corporate policies and pricing strategies applicable to the operation of Plaintiffs' franchises.

**COUNT ONE**
**(Claims under the Petroleum Marketing Practices Act)**

31. The allegations of Paragraphs 1-30 are incorporated herein by reference.

32. At all material times, the Plaintiffs were franchisees entitled to the protection of the Petroleum Marketing Practices Act, 15 USC §§2801-2807 ("PMPA").

33. Defendants wrongfully terminated the franchises owned by the Plaintiffs.

34. Defendants acted in bad faith and in breach of their contractual and other obligations under the PMPA and the Franchise Agreements by one or more of the following violations:

a. Changing material credit terms without commercially reasonable basis and without advance notice or a reasonable opportunity to cure;

b. Failing to allow Plaintiffs a commercially reasonable opportunity to exercise good faith efforts to carry out the provisions of the franchise obligations;

c. Acting on incorrect, inaccurate, incomplete and inadequately investigated facts on which to terminate the franchise relationship;

d. Withholding gasoline deliveries with the intent and knowledge that the Plaintiffs would be unable to continue to operate without such deliveries;

e. Creating a constructive termination of the franchise by unfairly and unreasonably withholding gasoline deliveries in order to reacquire Plaintiffs' franchise locations for the financial benefit of Defendants, in violation of 15 U.S.C. §2802 (b)(2)(E)(ii).

35. The termination of the franchises by Defendants violated the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807, as amended, by (a) failing to give proper notice, (b) failing to provide an opportunity to cure, (c) failing to act on any objective and verified information, and (d) failing to provide the Plaintiffs with the benefits that they were entitled to under the franchise agreements.

36. The Plaintiffs suffered damages as a result of the violations of the PMPA by Defendants, including but not limited to lost profits, lost future earnings, lost franchise fees and fuel deposits.

37. The full amount of Plaintiffs' damages for lost profits and lost future earning cannot be accurately determined at this time and is subject to proof at the time of trial. Plaintiffs allege that as of April 2010, the appraised value for the franchise locations owned by AOH was over Five Million Dollars ($5,000,000.00).

38. The total amount of the franchise fees lost by the Plaintiffs as a result of the acts and omissions of Defendants is approximately $610,000.00.

39. The acts and omissions of Defendants were done with intentional and willful disregard of the requirements of the PMPA and with intentional and willful disregard of the rights of Plaintiffs under the PMPA. Punitive damages should be awarded to deter Defendants from engaging in such reprehensible conduct with other similarly situated franchisees.

40. Plaintiffs are entitled to equitable relief provided under to PMPA to remedy the effects of the violations of the PMPA by the Defendants.

41. Plaintiffs are entitled to recover their costs, including expert witness fees

and reasonable attorney's fees for all violations of the PMPA established by the evidence at trial.

**COUNT TWO**
**(Material Misrepresentation in Franchise Sale, Breach of Duty of Good Faith and Fair Dealing)**

42. The allegations of Paragraphs 1-41 are incorporated herein by reference.

43. BPWCP and/or BPPNA exercised actual and/or constructive control over the operation and success of Plaintiffs' gas stations and convenience stores, including but not limited to:

a. When fuel was delivered to Plaintiffs;

b. How much fuel was delivered to Plaintiffs;

c. The price of fuel sold to Plaintiffs;

d. The price of fuel sold by Plaintiffs;

e. How much fuel was sold to competitors of Plaintiffs;

f. The price at which fuel was sold to competitors of Plaintiff;

g. The selection of vendors who sold convenience store products and services to Plaintiffs

h. The price of convenience store products and services charged by vendors to Plaintiffs;

i. The price of convenience store products and services sold by Plaintiffs;

44. Prior to selling convenience store and gasoline station franchises to the Plaintiffs, BPWCP owned and operated those same convenience stores and gasoline stations.

45. Plaintiffs allege that prior to selling franchises to Plaintiffs, BPWCP had been unable to successfully compete with competitors in the Arizona marketplace and the BP-owned stores in Arizona were not profitable.

46. Plaintiffs allege that at the direction of its parent corporation BP PLC, BPWCP and/or BPPNA decided to sell the BP-owned sites in Arizona to individuals and entities such as Plaintiffs.

47. Upon information and belief, Plaintiffs allege that in order to make the BP-owned sites appear to be financially viable to support the sale of franchises to Plaintiffs, BPWCP sold gasoline and products at its BP-owned gasoline stations to consumers in Arizona at prices at or below BP's cost for a period of time before selling franchises to Plaintiffs.

48. The ability of a franchise operator to offer gasoline for sale at competitive prices is a material and essential element of the franchise relationship.

49. Prior to purchasing franchises from BPWCP, Plaintiffs had no actual or constructive knowledge of the actions of BP in reducing wholesale gasoline prices below cost to increase the volume of gasoline sales.

50. BPWCP failed to disclose any material financial details about the cost of goods sold, profit margins, or the actual financial performance of the individual franchises in the franchise market areas sold to Plaintiffs.

51. The decision by BPWCP to artificially inflate the gasoline sales volumes of the sites sold to Plaintiffs by selling gasoline products below the true market cost and/or below a cost that Plaintiffs were provided by BPWCP was a false and

intentional misrepresentation.

52. The true wholesale price of gasoline sold by BPWCP prior to selling franchises to Plaintiffs and the performance of the BP-owned gasoline stations prior to Plaintiffs' purchase of such franchises was a material and critical element of the franchise contracts between BP and the Plaintiffs.

53. BPWCP had a duty to fully and fairly disclose the true performance data of the franchise sites to Plaintiffs before Plaintiffs purchased those franchise sites.

54. BPWCP had actual knowledge that the information BPWCP disclosed regarding the performance and viability of the franchises sold to Plaintiffs was false, misleading, and in violation of the duty to disclose material information to prospective franchisees.

55. BPWCP intended that the Plaintiffs rely on the representations by BPWCP in deciding whether to purchase franchises from BPWCP.

56. In deciding whether to purchase franchises from BPWCP, Plaintiffs reasonably relied on the accuracy and completeness of the sales information reported and disclosed by BPWCP at its BP-owned sites in Arizona.

57. BPWCP knew that Plaintiffs would rely and did rely on the financial information provided by BP to support the sale of franchises to Plaintiffs, including franchise disclosure documents.

58. Plaintiffs had a right to rely on the accuracy and integrity of the information disclosed by BPWCP as a reliable factual basis for the decision to purchase franchises from BPWCP.

59. As a result of the intentional and material misrepresentations by BPWCP, Plaintiffs purchased franchises that BPWCP knew and should have known would not be able to operate successfully or profitably without continuing unlimited wholesale price support from BPWCP during the twenty (20) year term of the franchises.

60. The acts and omissions of BPWCP were in breach of the duty of good faith and fair dealing.

61. The acts and omissions of BPWCP were in breach of franchise disclosure obligations.

62. The acts and omissions of BPWCP were done solely for the financial profit of BPWCP and/or BPPNA and/or the parent corporation BP PLC. Upon information and belief, Plaintiffs allege that due to the volume of gasoline sold by BPWCP to Plaintiffs, increases as small as one cent ($.01) per gallon in the wholesale price of gasoline sold to Plaintiffs would result in millions of dollars of extra profit to BPWCP, all to Plaintiffs' detriment and financial damage.

63. Plaintiffs were damaged as a direct and proximate result of the acts and omissions of BPWCP. The full amount of such damages is not yet known and will be established by proof at the time of trial regarding the loss of business, loss of franchise and other fees charged by BP, benefit of the bargain and future loss of earnings.

**COUNT THREE**
**(Breach of Contract: Price Support)**

64. The allegations of Paragraphs 1-63 are incorporated herein by reference.

65. At all material times, BPWCP and/or BPPNA, dictated and controlled the supply and pricing of gasoline products to Plaintiffs in Arizona.

66. At the outset of the franchise relationship, as an express inducement for the Plaintiffs to buy BP owned stations in Arizona operating as *am/pm* franchise facilities, BPWCP promised to provide the Plaintiff franchisees with unlimited wholesale price support in the form of a temporary voluntary allowance, for the price of gasoline product sold by BPWCP to the Arizona Plaintiff LLCs.

67. BPWCP promised to reduce the wholesale pricing on fuel sold by BPWCP to the Plaintiffs as needed by market conditions to allow the Plaintiffs to successfully compete for gasoline sales in the marketplace with larger and better known gasoline retailers in Arizona.

68. The wholesale price of the gasoline sold by Defendants to the Arizona Plaintiffs was within the management and control of BPWCP. The extent to which such pricing decisions were made or influenced by BPPNA and/or the parent company BP PLC is not known to Plaintiffs.

69. BPWCP knew and intended that the wholesale price of gasoline sold by BPWCP to the Plaintiffs affected the pump price at which Plaintiffs could sell gasoline in Arizona and remain competitive while making a reasonable profit.

70. Upon information and belief, the Plaintiffs allege that the unlimited price support provided to the Plaintiffs was part of a corporate strategy adopted by BPWCP and/or BPPNA and/or BP PLC to induce Plaintiffs to purchase BP owned locations in Arizona and to conceal the actual poor financial performance and likely failure of such

franchises without such price support.

71. Upon information and belief, Plaintiffs allege that BPWCP provided unlimited price support assistance to the Plaintiffs for an extended period of time after the Plaintiffs entered into the franchise agreements with BPWCP.

72. BPWCP acted in bad faith and in breach of the duty of good faith and fair dealing when it unilaterally reduced or eliminated the unlimited price support to Plaintiffs in order to increase its own profits. Plaintiffs were financially damaged by such acts and omissions of BPWCP.

73. BPWCP acted in bad faith and in breach of the duty of good faith and fair dealing when BPWCP reduced or eliminated the unlimited price without notice or disclosure to AOH or to the Arizona Plaintiff LLCs, and without the express or implied consent of AOH or the Arizona Plaintiff LLCs.

74. Plaintiffs were unable to mitigate the financial damages caused by BPWCP in reducing the unlimited price support because of the restrictive covenants and exclusive terms of the franchises sold by BPWCP to Plaintiffs.

75. As a direct and proximate result of the reduction and/or elimination of the unlimited price support by BPWCP, Plaintiffs lost substantial sales of gasoline and convenience store products.

76. The full amount of the damages suffered by Plaintiffs is not known at this time because Plaintiffs do not know when BPWCP first reduced and/or withdrew or modified the unlimited wholesale price support for gasoline products it sold to Plaintiffs. The full amount of such damages will be established by proof at the time of

trial.

**COUNT FOUR**
**(Unfair Competition; Breach of Good Faith and Fair Dealing)**

77. The allegations of Paragraphs 1-76 are incorporated herein by reference.

78. In the Contract Dealer Gasoline Agreements between the parties, BPWCP reserved the right to establish additional ARCO or other brand or no brand gasoline stations in the State of Arizona.

79. During the life of the agreements between the parties, BPWCP did not establish other gasoline stations in the State of Arizona.

80. At all material times, Plaintiffs sold gasoline in specific market or trade areas, and within pricing zones established by BPWCP and/or BPPNA.

81. Upon information and belief, the Plaintiffs allege that in addition to reducing the wholesale price support promised to Plaintiffs, BPWCP sold gasoline products in Arizona to direct competitors of the Plaintiffs operating within close proximity to the locations, pricing zones and market areas operated by Plaintiffs under the franchise agreements.

82. Plaintiffs allege that BPWCP sold its gasoline products to competitors of Plaintiffs within the same market or trade areas and/or the pricing zones from which Plaintiffs would be expected to attract customers.

83. BPWCP had actual and constructive notice that selling fuel to competitors of Plaintiffs, within the same market areas or pricing zones as Plaintiffs would reduce Plaintiffs effective market area, reduce sales and cause substantial

financial damages to Plaintiffs.

84. The price of gasoline sold by BPWCP to the Plaintiffs was set by BPWCP, but was subject to its continuing duty to provide the Plaintiffs with the unlimited price support promised by BPWCP as needed to allow the Plaintiffs to fairly maintain their competitive advantage for the sale of the gasoline products in Arizona.

85. Defendants were obligated to exercise good faith and fair dealing in providing Plaintiffs with gasoline and other services to fulfill the express and implied obligations imposed by the written agreements between the parties.

86. In breach of the duty of good faith and fair dealing, the Plaintiffs allege that BPWCP sold gasoline products to direct and substantial competitors of the Plaintiffs at wholesale prices less than the wholesale prices charged to the Arizona Plaintiff LLCs.

87. As a direct and proximate result of the sales to competitors in the same markets and in close proximity to the sites operated by the Arizona Plaintiff LLCs, BPWCP further damaged the ability of the Plaintiffs to successfully compete for gasoline sales in their respective market areas.

88. Plaintiff were damaged by the acts and omissions of Defendants by the reduction and subsequent elimination of the unlimited support promised to the Plaintiffs, and by selling gasoline to direct competitors of the Plaintiffs at prices that gave such competitors an unfair competitive advantage over the Plaintiffs. Plaintiffs do not know the full extent of the damages suffered because BPWCP has not disclosed the amount of such sales, the competitors were sold to or the price charged to those

competitors.

89. Plaintiffs allege that the acts of BPWCP were intentional, done in bad faith and in breach of the obligations of good faith and fair dealing, all of which caused financial harm to Plaintiffs.

**COUNT FIVE**
**(Breach of Contract; Breach of Good Faith and Fair Dealing)**

90. The allegations of Paragraphs 1-89 are incorporated herein by reference.

91. Plaintiffs made suitable and acceptable financial arrangements with BPWCP for credit terms, including electronic funds transfers that could be initiated by BPWCP and/or BPPNA for direct payment to BPWCP of all invoices, within three (3) days, for gasoline delivered to the Plaintiffs' gasoline stations.

92. Plaintiffs successfully and satisfactorily made all such payments in a timely manner from the outset of the franchise relationships with BPWCP for approximately twelve years, until March 21, 2013. During that period, Plaintiffs purchased over Two Billion Dollars ($2,000,000,000.00) of fuel from BPWCP on the credit terms previously granted to Plaintiffs.

93. On or about March 21, 2013, BPWCP unilaterally and without commercially reasonable cause or advance notice, changed the credit terms to require prepaid wire payments or cash payments on delivery for gasoline products sold by BPWCP to the Arizona Plaintiff LLCs.

94. The change in credit terms by BPWCP was not commercially reasonable or justified.

95. The Plaintiffs were damaged by the change in credit terms and were unable to continue operations of the Plaintiffs' Arizona franchise locations.

96. As a direct and proximate result of the change in credit terms, Plaintiffs lost their franchise locations, and other damages including future economic losses. Plaintiffs allege that the appraised value of the franchise locations as of April 2010 was at least $5 Million Dollars ($5,000,000.00). The full amount of such damages cannot be determined at this time, but will be established by proof at the time of trial.

**COUNT SIX**
**(Violation of Arizona Revised Statutes Section 44-1551, *et seq.*)**

97. The allegations of Paragraphs 1-96 are incorporated herein by reference.

98. To the extent that any of the claims of the Plaintiffs are not pre-empted by the remedies provided in the PMPA, (15 USC §§2801-2807), Plaintiffs allege that Arizona Revised Statutes §44-1551, *et seq.* applies to the transactions and obligations alleged in this Complaint.

99. BPWCP violated Arizona Revised Statutes §44-1554 (2) by failing to act in good faith in performing or complying with any terms, provisions of or collateral to a franchise.

100. BPWCP violated Arizona Revised Statutes §44-1554 (3) by terminating or cancelling Plaintiffs' franchises without good cause.

101. BPWCP violated Arizona Revised Statutes §44-1554 (6) by changing restrictions on non-petroleum related business activities of Plaintiffs during the term of the franchise.

102. BPWCP violated Arizona Revised Statutes §44-1552 (1) by failing to fairly and accurately disclose to Plaintiffs the true gallonage volume history of locations sold to Plaintiffs by including the actual price of such fuel sold by BPWCP during its ownership of the franchises later sold to Plaintiffs and the profit margins achieved by BPWCP with unlimited price support.

103. BPWCP violated Arizona Revised Statutes §44-1556 by improperly terminating Plaintiffs' franchises without proper notice or an opportunity to cure.

104. As a direct and proximate result of violations of Arizona law by Defendants, Plaintiffs are entitled to all remedies and damages provided in Arizona Revised Statutes §§44-1558 and 44-1559, including attorney's fees

**COUNT SEVEN**
**(Accounting for Royalty, Advertising and Marketing Fees)**

105. The allegations of Paragraphs 1-104 are incorporated herein by reference.

106. Defendants required that Plaintiffs to pay advertising fees and/or marketing fees at the rate of 5.5% of gross revenues of the convenience store franchises sold to Plaintiffs.

107. Defendants required that Plaintiffs pay royalty fees of 5% of gross revenues.

108. Plaintiffs paid all such fees that Defendants required to be paid. Plaintiffs allege that the gross revenues for the convenience stores owned by Plaintiffs during the 12.5 years of the franchise relationship with BPWCP was over Sixteen

Million Dollars ($16,000,000.00).

109. Defendants represented and promised that advertising and marketing fees paid by Plaintiffs would be used by BPWCP solely for advertising and marketing purposes to increase the value of the BP brand, to assist Plaintiffs with sufficient and effective marketing to successfully operate the *am/pm* Mini Market convenience stores in the franchise markets in Arizona at a reasonable profit, and to allow Plaintiffs compete with larger and better known competitors in the Arizona marketplace.

110. Plaintiffs allege that advertising and marketing fees paid by them were not properly applied to benefit the operations of Plaintiffs' franchises.

111. Plaintiffs have never received any accounting of how the advertising and marketing fees paid by Plaintiffs were actually spent by Defendants.

112. Plaintiffs allege that to the extent that the advertising and marketing fees paid to Defendants were not properly used for their intended purpose, then Defendants have been unjustly enriched, and Plaintiffs are entitled to recover all such misapplied or unspent advertising and marketing payments.

113. Plaintiffs are entitled to a full accounting of the expenditure of all advertising and marketing fees paid by Plaintiffs to Defendants.

114. The failure by Defendants to be able to properly account for the expenditure of all advertising or marketing fees paid by Plaintiffs justifies a full refund of all such amounts, together with interest at the highest rate allowed by law.

115. The full amount of Plaintiffs damages cannot be determined at this time because the information needed for such calculations is solely within the knowledge

and control of Defendants or their parent corporation..

116. To the extent that Defendants cannot properly or accurately account for the marketing fees, then such fees were received as the result of intentionally false, misleading, or deceptive promises, and justify the imposition of punitive damages.

**COUNT EIGHT**
**Loss of Credit**

117. The allegations of Paragraphs 1-116 are incorporated herein by reference.

118. In an unrelated transaction, Plaintiff AOH was required by Defendants and/or its parent corporation BP PLC to participate in the sale of BPPNA-owned franchises to Georgia Oil Holdings, LLC, an Georgia Limited Liability Company, and to Florida Oil Holdings, LLC, a Florida Limited Liability Company.

119. Plaintiff AOH paid approximately Eight Million Dollars ($8,000,000.00) of its separate financial assets to help secure loans in the approximate amount of One Hundred Million Dollars ($100,000,000.00) to allow Georgia Oil Holdings, LLC to purchase franchise sites from BPPNA in the Atlanta, Georgia market, and to allow Florida Oil Holdings, LLC to purchase sites from BPPNA in the Orlando, Florida market.

120. BPPNA and/or BP PLC required Plaintiffs Russell Scaramella and Delery Guillory to personally guarantee the loans obtained by Georgia Oil Holdings and Florida Oil Holdings.

121. The loans for Georgia Oil Holdings, LLC and for Florida Oil Holdings,

LLC went into default due to the acts and/or omissions of Defendants.

122. As a result of the default of the loans, Plaintiff Russell Scaramella has been damaged.

123. As a result of the default of the loans, Plaintiff Delery Guillory has been damaged.

**COUNT NINE**
**(Breach of Warranty of Fitness for Purpose)**

124. The allegations of Paragraphs 1-123 are incorporated herein by reference.

125. Defendants required that each of the Plaintiffs purchase, install, and exclusively use a point of sale system called Retalix.

126. Defendants knew the particular purpose for which the Retalix system was being supplied to Plaintiffs.

127. Defendants made express representations that the Retalix system would assist Plaintiffs with the successful operation and accounting of the franchise businesses sold by Defendants to Plaintiffs.

128. Plaintiffs were prohibited from making an independent selection of an operation management or accounting system.

129. Plaintiffs were not permitted to test or independently evaluate the Retalix system before being required to purchase it from Defendants.

130. Plaintiffs had no choice but to rely on Defendants to provide a system that was commercially useful, accurate, reliable, and fit for its intended purpose.

131. The Retalix system was defective, inaccurate and not suitable or commercially reasonable for the application to Plaintiffs' business operations and accounting.

132. Upon information and belief, Plaintiffs allege that before the Retalix system was sold to Plaintiffs, one or more Defendants caused material modifications to be made to the base Retalix system.

133. Plaintiffs allege that the modifications made by Defendants rendered the Retalix system commercially useless, unfit for its intended purpose, and caused damages to Plaintiffs including inaccurate accounting information and improper calculations of point of sales payments.

134. Defendants have admitted to Plaintiffs and other franchisees that the Retalix system was defective and not suitable for its intended commercial purpose.

135. Defendants were unable to make the Retalix system fully functional or commercially reliable for use by Plaintiffs.

136. Defendants prohibited Plaintiffs from removing, replacing, or repairing the Retalix system to make it functional.

137. Plaintiffs have demanded a refund of monies paid, and forgiveness of amounts still claimed by Defendants as due and owing.

138. Defendants have refused and failed to refund such amounts paid by Plaintiffs and/or to forgive amounts claimed to be due and owing for the purchase of the Retalix systems.

139. Plaintiffs have been damaged by the defects and failures of the Retalix

system.

140. The full extent of the damages suffered by Plaintiffs arising from and related to the purchase and use by Plaintiffs of the Retalix system is not yet known but will be established by proof at the time of trial. At a minimum, each Plaintiff has been damaged by having paid and/or being obligated to pay any remaining balance of the purchase price for the Retalix system.

Wherefore, Plaintiffs request that the Court find that:

1. Plaintiffs were franchisees entitled to all of the rights and benefits provided by the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807;

2. Defendants violated the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807 and Defendants caused Plaintiffs' damages.

3. The violations of the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807 were intentionally and willfully done for the financial benefit of Defendants and with reckless disregard for the rights of Plaintiffs and intended to cause Plaintiffs to lose their franchises so that Defendants could resell the franchises to others, and such conduct warrants the imposition of punitive damages;

4. That Plaintiffs' franchises were improperly terminated by Defendants, resulting in financial damages, in an amount to be determined in accordance with proof at the time of trial;

5. That Plaintiffs' franchises were damaged by Defendants by unfair competition and the breach of the duty of good faith and fair dealing in an amount to be determined in accordance with proof at the time of trial;

6. Plaintiffs should be compensated for payments made to BP for the Retalix system, and damages in accordance with proof at the time of trial;

7. Plaintiffs should recover all franchise fees paid to BP, in the amount of $610,000.00, in accordance with proof at the time of trial;

8. Plaintiffs are entitled to a full accounting of how all advertising and marketing royalties were spent by BP and any unused, unproven, unaccounted or misallocated marketing funds should be returned to Plaintiffs, together with prejudgment interest, all in accordance with proof at the time of trial;

9. Plaintiffs should recover all fuel deposits retained by BP of $64,800 and *am/pm* deposits of $6,000, in accordance with proof at the time of trial.

10. Plaintiff Russell Scaramella should recover damages for financial losses and damage to his personal credit and reputation as a direct and proximate result of the acts and omissions of Defendants in accordance with proof at the time of trial;

11. Plaintiff Delery Guillory should recover damages for financial losses and damage to his personal credit and reputation as a direct and proximate result of the acts and omissions of Defendants in accordance with proof at the time of trial;

12. Plaintiffs were damaged by the acts and omissions of Defendants as alleged in this Complaint in the amount of not less than Two Hundred and Fifty Million Dollars ($250,000,000.00), exclusive of punitive damage claims and subject to proof at the time of trial;

13. The conduct of Defendants warrants the imposition of punitive damages.

14. Plaintiffs should recover their reasonable costs, attorney's fees and

expert witness fees, together with prejudgment interest on all liquidated damages;

15. Plaintiffs are entitled to other equitable relief necessary to remedy the effects of the violations of the Petroleum Marketing Practices Act, 15 U.S.C. §§2801-2807 and/or Arizona Revised Statutes §44-1551, *et seq.* committed by Defendants

16. Plaintiffs request that this matter be set for a jury trial.

17. For such other relief as the Court deems appropriate.

**DATED** March 19, 2014

**LAW OFFICES OF DON STEVENS P.C.**

By: ______________________

Don Stevens
15433 N. Tatum Blvd. Suite 106
Phoenix, AZ 85032
Attorneys for Plaintiffs

**ORIGINAL** of the foregoing e-filed in United States District Court for the District of Arizona on the 19th day of March, 2014

By ______________________