1

2

3

4

5

6             **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| Arizona Oil Holdings LLC,   Gilbert Oil LLC,   Globoil LLC,   Prescott Oil LLC, Sedona Oil LLC,  So Mesa Oil LLC, Peoria Oil  LLC,  Russell  Scaramella,  Delery Guillory,<br><br>                           Plaintiffs,<br><br>v.<br><br>BP West Coast Products LLC, et al.,<br><br>                           Defendants. | No. CV-14-00569-PHX-GMS<br><br>**ORDER** |
| BP West Coast Products LLC,<br><br>                           Counter Claimant,<br><br>v.<br><br>Gilbert Oil LLC, et al.,<br><br>                           Counter Defendants. | |

9

10

11

12

13

14

15

16

17

18

19

20

21        Pending before the Court is Defendant BP Products North America Incorporated's

22   Motion to Dismiss Count Six of the First Amended Complaint and to Dismiss BP

23   Products North America Incorporated as a Party to This Case. (Doc. 26.)   For the

24   following reasons, the Motion is granted.

25                              **BACKGROUND**

26        This action is between Plaintiffs Arizona Oil Holdings LLC ("Arizona Oil")

27   Russell Scaramella ("Scaramella"), Arizona Oil's managing member; Delery Guillory

28   ("Guillory"), one of its members; and other Arizona limited liability companies of which

1    Arizona Oil is a member and Defendants BP West Coast Products LLC ("BP West

2    Coast") and BP Products North America Incorporated ("BP North America").  No parties

3    contest that the transactions in the first five Counts of the Amended Complaint took place

4    in Arizona.

5          In Count Six Plaintiffs allege that BP North America sold franchises it owned in

6    Georgia to Georgia Oil Holdings, LLC ("Georgia Oil") and franchises in Florida to

7    Florida Oil Holdings, LLC, ("Florida Oil").  Georgia Oil and Florida Oil were owned by

8    Arizona Oil, Scaramella, and Guillory.  The terms of the sale required Arizona Oil to pay

9    approximately eight million dollars of its separate assets to help secure loans needed in

10    the amount of approximately one hundred million dollars to purchase the franchises from

11    BP North America.  In addition, Scaramella and Guillory were required to personally

12    guarantee these loans.  BP North America knew of these personal guarantees.

13          Then in 2012, BP North America entered negotiations with Florida Oil to

14    repurchase franchises in Orlando.  BP North America had authority to make the offer to

15    Scaramella to reacquire the franchises.

16          Florida Oil accepted the offer. (Doc. 30, Ex. A.)  During the negotiations, BP

17    North America made representations to third parties that BP North America would pay

18    off the debts owed by Florida Oil.  The date for close of escrow was set for February 5,

19    2012, but BP North America backed out of the sale without giving a reason for doing so.

20    The loans that Scaramella and Guillery guaranteed that pertained to Florida Oil's original

21    purchase of the BP franchises went into default.  This default triggered defaults in other

22    loans to Arizona Oil.  Plaintiffs then brought suit claiming breach of contract and

23    interference with the contractual relationship between Florida Oil and its creditors.

24          BP North America first argues that Plaintiffs lack standing to bring the contract

25    claim in Count Six because any breach of contract claim belongs to Florida Oil, which is

26    not a Plaintiff here.  BP North America then argues that Plaintiffs failed to sufficiently

27    state a tortious interference contract claim.  Finally, because Count Six is the only count

28    in the Amended Complaint that names BP North America as a party,  BP North America

1    requests to be dismissed.

2                                    **DISCUSSION**

3    **I.    Legal Standard for Standing**

4            Whether a party has standing under Article III of the Constitution is a "threshold

5    jurisdictional question" that a court must decide before it may consider the merits.  *Steel*

6    *Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  "[S]tanding is an essential

7    and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v.*

8    *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The party seeking jurisdiction bears the

9    burden of establishing standing.  *Id.* at 561.  At an "irreducible constitutional minimum,"

10   standing requires the party asserting the existence of federal court jurisdiction to establish

11   three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual

12   or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the

13   injury.  *Lujan*, 504 U.S. at 560–61.

14           Tied to the causation and redressability requirements for standing is the prudential

15   standing requirement that parties "cannot rest [their] claim to relief on the legal rights or

16   interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  This prohibition

17   on third-party standing often extends to cases in which a shareholder of a corporation or a

18   member of a limited liability company seeks to personally sue for injuries done to the

19   business entity.  *See Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S.

20   331, 336 (1990) ("Related to [the prohibition on third-party standing] we think is the so-

21   called shareholder standing rule.").

22           To have standing, shareholders must typically show their injury is direct and not

23   derivative of the corporation's injury.  *See Alcan Aluminium*, 493 U.S. at 336.[1]

24   _____

25   [1] Here, Illinois law controls because the Reconveyance Agreement states that it "shall be
     governed by and construed in accordance with the internal, substantive laws of the State

26   of Illinois."[1]   (Doc. 30, Ex. A at 31.)   Arizona adopts the Restatement (Second) of
     Conflict of Laws, which states that parties' choice of law will be effective, so long as "the

27   particular issue is one which the parties could have resolved by an explicit provision in

28   their agreement directed to that issue."  Restatement (Second) of Conflict of Laws § 187.
     (1971); *see Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 208, 841 P.2d 198, 203

1    Guillery, Scaramella, and Arizona Oil, as owners of Florida Oil, claim they

2    suffered personally due to BP North America's breach of the Reconveyance Agreement.

3    But they were not parties to the contract, have not asserted any injury uncommon to other

4    owners of Florida Oil, and were owed no special duty by BP North America.  According

5    to the law of Illinois, Florida Oil was the party to the contract and the entity who felt

6    direct injury at its breach.  *See Zokoych v. Spalding*, 344 N.E.2d 805, 813 (1976) ("Where

7    there is no showing that plaintiff himself had been injured in any capacity other than in

8    common with his fellow stockholders, the cause of action belongs to the corporation.").

9    Thus, under state substantive law, Plaintiffs' breach of contract claims is characterized as

10   derivative.

11   Under federal procedural law, Plaintiffs lack standing to bring the contract claim

12   because the suit is derivative and they failed to bring it as such.  *Alcan Aluminium*, 493

13   U.S. at 336; *see also* Fed. R. Civ. P. 23.1.  Instead, they seek to assert third-party standing

14   through Florida Oil, which is prohibited in federal courts.  *Alcan Aluminium*, 493 U.S. at

15   336.

16   **III.    Sufficiency of Interference with Contract Claim**

17   In addition to claiming breach of contract, Plaintiffs also claim BP North America

18   interfered with Florida Oil's contracts with its creditors.[2]  This claim is analyzed under

19   Rule 12(b)(6), which "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d

20   729, 732 (9th Cir. 2001).  To survive dismissal for failure to state a claim pursuant to

21   Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a

22   "formulaic recitation of the elements of a cause of action"; it must contain factual

23   allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atl.*

24

25   (1992).  That appears to be the case here.

26

27        [2] It is unclear whether Plaintiffs treat this interference with contract claim as a
separate claim or whether they are simply using it as a theory to prove damages for the

28   above-mentioned breach of contract claim.  In either case, it fails for the reasons stated in
this Section.

- 4 -

1   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   While "a complaint need not contain

2   detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

3   plausible on its face.'"   *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th

4   Cir.2008) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the

5   plaintiff pleads factual content that allows the court to draw the reasonable inference that

6   the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7   (2009) (citing *Twombly*, 550 U.S. at 556).   Plausibility requires "more than a sheer

8   possibility that a defendant has acted unlawfully."   *Twombly*, 550 U.S. at 555.

9          When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll

10   allegations of material fact are taken as true and construed in the light most favorable to

11   the nonmoving party."   *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).   However,

12   legal conclusions couched as factual allegations are not given a presumption of

13   truthfulness, and "conclusory allegations of law and unwarranted inferences are not

14   sufficient to defeat a motion to dismiss."   *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

15   1998).

16          A valid tortious interference with contract claim requires a plaintiff to allege facts

17   sufficient to find (1) an existing contract between the plaintiff and a third party, (2)

18   defendant's knowledge of the contract, (3) a breach of the contract caused by defendant's

19   intentional interference, (4) damages, and (5) improper conduct by the defendant.   *Wells*

20   *Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension*

21   *Trust Fund*, 201 Ariz. 474, 493, 38 P.3d 12, 31 (2002).

22          Here, Plaintiffs allege BP North America knew of Florida Oil's obligations to its

23   creditors because BP North America originally conveyed these franchises to Florida Oil.

24   In addition, Plaintiffs allege that because BP North America made assurances to Florida

25   Oil's creditors that BP North America would assume Florida Oil's obligations after the

26   reconveyance, BP North America interfered with the contractual relationships between

27   Florida Oil and its creditors by not completing the purchase.

28          Nothing in Plaintiffs' allegations, however, supports a claim that BP North

1   America caused Florida Oil's creditors to breach their loan contracts. Plaintiffs'

2   obligations to their creditors pre-existed the sale to BP North America. Even without BP

3   North America's negotiations, a default on these obligations would have triggered

4   responses by Florida Oil's creditors. Plaintiffs do not suggest how BP North America's

5   assurances to their creditors that it would pay the balance of the loans caused them to

6   default on their loans when BP North American backed out of the deal. Without clearer

7   factual allegations of a breach of contract, Plaintiffs have failed to state a claim for

8   tortious interference with contract.[3]

9                                        **CONCLUSION**

10          Plaintiffs lack standing to bring the contract claim against BP North America

11  because (1) they were not parties to the Reconveyance Agreement and (2) the prohibition

12  against third-party standing precludes them from asserting a contract claim on behalf of

13  Florida Oil. Plaintiffs also fail to state a tortious interference with contract claim.

14          **IT IS THEREFORE ORDERED** that BP Products North America

15  Incorporated's Motion to Dismiss Count Six of the First Amended Complaint (Doc. 26)

16  is **GRANTED**.

17          **IT IS FURTHER ORDERED** that BP Products North America Incorporated is

18  dismissed as a party to this case.

19          Dated this 1st day of October, 2014.

20

21          _____

22                              /G. Murray Snow
                                United States District Judge
23

24

25

26  _____

27      [3] Plaintiffs also include a promissory estoppel claim in their Response and ask the
    Court for leave to amend the Amended Complaint to include this claim. Yet, such a
28  request is premature because the factual allegations in the Amended Complaint fail to
    support any claim of detrimental reliance necessary to the adequate pleading of such a
    claim.