Don Stevens (#004265)
**Law Office of Don Stevens P.C.**
15433 N. Tatum Blvd. Suite 106
Phoenix, AZ  85032
don@donstevenslaw.com
Phone: 602-573-7652
Attorneys for Plaintiffs/Counterdefendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Oil Holdings, LLC, et al<br><br>Plaintiffs/Counterdefendants<br><br>vs.<br><br>BP West Coast Products, LLC, et al<br><br>Defendants/Counterclaimants | CASE NO.:  2:14-cv-00569-GMS<br><br>**RESPONSE OF PLAINTIFFS TO BP WEST COAST PRODUCTS MOTION FOR SANCTIONS** |

Plaintiffs request that the Motion for Sanctions be denied in all respects for the following reasons:

1.      Despite being advised in 2013 that a lawsuit might be filed, BP West Coast Products did not issue any litigation hold document to Plaintiffs or make any request to Plaintiffs' counsel that required special handling of electronic documents.

2.      After the lawsuit was filed, BP West Coast Products proposed an extensive electronic protocol (Exhibit 1).  Plaintiffs objected to the electronic discovery protocol proposed by BP West Coast Products as burdensome, expensive, and would unnecessarily delay discovery (Exhibit 2).

3.      On August 1, 2014, Plaintiffs' Initial Disclosure Statement produced documents as required by Rule 26, Federal Rules of Civil Procedure.  BP West Coast Products did not make any specific objection to the nature, extent, or format of the documents produced by Plaintiffs nor did it seek additional relief from the Court.

4.      The parties cooperated in the preparation of the Case Management Report (Document #40). Plaintiffs objected to the proposal by BP West Coast Products for electronically stored information (Document #40, ¶11A).  BP West Coast Products requested the Court to issue a specific order for imposing an electronic protocol on all document production (Document #40, ¶11B).

5.      The Court's Case Management Order (Document#44) filed August 4, 2014 did not adopt the proposal by BP West Coast Products and did not impose any specific protocol for electronically stored information, although such an optional order was authorized by Rule 16(b)(3)(B)(iii).

6.      After the entry of the Case Management Order, no discovery objection was made by BP West Coast Products regarding the adequacy or completeness of Plaintiffs' electronic disclosures.  At the request of BP West Coast Products, Plaintiffs had the documents that were produced with their Initial Disclosure Statement converted to a searchable electronic format.

7.      On August 13, 2014 BP West Coast Products submitted a detailed Request for Production of Documents (Exhibit 3) with multiple pages of instructions, definitions, and categories of information.  In particular, the definition of "Document" (id. ¶8) is broad, but only requests production of "electronic matter of any kind or nature, including all forms of data compilations from which information can be obtained, and, if necessary translated into reasonably useable form.". The "Instructions" ¶2 added "These requests call for and should be read to include all electronically stored information as set forth in the Federal Rules of Civil Procedure."  None of those requests demand the kind of electronic search protocol for which BP West Coast Products asked the Court to impose on discovery and for which BP West Coast Products now seeks sanctions.  A summary of the categories of information requested is attached as Exhibit 4.  Those requests, plainly read, do not require the electronic investigation or search that BP West Coast

Products seeks in this Motion for Sanctions.

8.      In its Request for Production, BP West Coast Products did not make any specific and separate request for production of electronically stored information, as authorized by the procedures found in Rule 34(a)(1)(a), Federal Rules of Civil Procedure.  Waiting until the close of discovery to seek sanctions imposing an electronic discovery protocol for the production of documents that occurred approximately 4-5 months earlier is not supported by the facts or by the law.  As a result of the delay in addressing this issue using a readily available discovery tool, Plaintiffs were deprived of the opportunity to make responses and to raise objections allowed under Rule 34(b)(2). The Court should find that BP West Coast Products has waived the right to raise this discovery issue at this late date.

9.      The complaints of BP West Coast Products that the discovery of documents responsive the categories requested by BP West Coast Products Plaintiffs were grossly negligent or reckless is likewise not supported by the facts.  At the direction of Plaintiffs' counsel, a list of all items that were specifically requested by BP West Coast Products was prepared.  Each item on the Request for Production was assigned to one of four specific persons employed by AOH, with the in-person instruction by counsel that any document of any kind that was responsive in any way to the Requested items should be located and assembled for counsel's review (Affidavit of Bobbie Lasan, Exhibit 5; Affidavit of Don Stevens, Exhibit 6).  The documents that were located and assembled were then personally reviewed by counsel to make sure that the production of documents could be complete.

10.      The Motion for Sanctions asks the Court to punish the Plaintiffs for failing to comply with (a) an electronic protocol that was never agreed to, (b) an order by the Court that was never entered, (c) a specific request that was not made by BP West Coast Products under Rule 34, (d) for a request for production that included none of the

specific protocols BP West Coast Products now claims should have been followed, and (e) raised within days of the close of discovery when it could have been resolved months earlier had it been as critical as BP West Coast Products now claims.

11.     To overcome this glaring problem, and to shift responsibility for its lack of diligence, BP West Coast Products asserts that a litigation hold sent by Plaintiffs to BP West Coast Products in June 2013 also required Plaintiffs' counsel to issue the same specific litigation hold to Plaintiffs.  The hold letter to BP West Coast Products was sent because BP West Coast Products had sold its operations to a wholly separate entity, Tesoro Corporation, and Plaintiffs were informed that the closing was effective July 1, 2013.  Plaintiffs continued to maintain its business records in the ordinary course of its operations at all material times.

It is respectfully submitted that Plaintiffs did not defy a court order or fail to fairly respond to discovery requests.  Nor should BP West Coast Products be allowed to wait until the last thirty days of discovery and base a motion for sanctions on a discovery issue that could have and should have been resolved at least five months earlier.  BP West Coast Products could have made a request under Rule 34 at any time, but did not. The Court should find that BP West Coast Products waived the issue or waited too long to raise it.

**1. The sanctions sought by BP West Coast Products would be tantamount to dismissal of Plaintiffs' claims and is not warranted under the facts of the case, including those outlined above.**

The Ninth Circuit Court of Appeals has identified five factors that a district court must consider before dismissing a case or declaring a default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana Int'l Corp. v.*

*Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990) (quoting *Malone v. U.S. Postal Service,* 833 F.2d 128 at 130 (C.A.9 (Cal.), 1987).

BP West Coast Products has cited *United States v. Town of Colorado City, Ariz.,* 3:12-CV-8123-HRH (D. Arizona, July 28, 2014) for the proposition that a federal court has the authority to impose a variety of sanctions.  That Court relied on existing case authority to determine what findings were required for imposition of the kind of sanctions sought by BP West Coast Products in this case.

> A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence." (citing *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Thompson v. U.S. Dep't of Housing & Urban Dev.,* 219 F.R.D. 93, 100 (D. Md. 2003)). "Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." Id., 790 F. Supp. 2d at 1005 (quoting *Goodman v. Praxair Servs.*, Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

Plaintiffs agree that they had an obligation to preserve their business records and evidence that was relevant to the claims or defenses in the case.  Plaintiffs submit that they did so.  There is nothing in the perfunctory Initial Disclosure Statement filed by BP West Coast Products that gives any hint about their defenses.  Although there are six separate Plaintiff LLCs, the claims asserted in the First Amended Complaint affected each entity equally and collectively.  Notably absent from the Motion for Sanctions is any specific explanation of what relevant and critical information is no longer available to BP West Coast Products.  The Court has been provided with no factual basis to determine whether the information is actually lost or whether it was material to a

specific theory of defense raised in the disclosure statement filed by BP West Coast Products.

Likewise, BP West Coast Products has provided the court with no facts on which the Court might reasonably determine that any loss of information was destroyed or altered in a way to intentionally deny BP West Coast Products the opportunity to discover the factual basis for Plaintiffs' claims. BP West Coast Products did obtain admissions from employees that a litigation hold was not imposed.  As more fully discussed below, Ms. Johnson's laptop contained only the daily price survey spreadsheets, and those were sent to AOH every day and those records have been produced by Plaintiffs in this litigation. The documents were also sent, also on a daily basis, to Joe Ritchie, the express agent of BP West Coast Products.

Likewise, Mr. Daziani's personal spreadsheets were not produced, but they were not the business records of Plaintiffs and will not be used as exhibits at trial.  They were not destroyed or altered.  They were not requested because Mr. Daziani had been working in the Georgia and Florida markets since 2009, and had little or no direct contact with the stores in Arizona that are the subject of this action.  When Mr. Daziani revealed in his deposition that he had flash drives with spreadsheet information, Plaintiffs' counsel promptly obtained the flash drives and produced the spreadsheets that related to the Arizona stores.  The remaining contents of those flash drives dealt solely with Georgia and Florida and is still available, however irrelevant it may be to the claims and defenses of BP West Coast Products. (See Exhibit 6, Affidavit of Don Stevens).

BP West Coast Products also acknowledges that to impose a sanction in the form of attorney's fees, the Court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith that delays or disrupts litigation or hampers enforcement of a court order, citing *Aviva USA Corp. v. Vazirani* 2:11-0369 (D.

Ariz. January 10, 2012).  As more fully discussed below, Plaintiffs and their counsel engaged in no conduct warranting such harsh sanctions in this case.

### 2.   Plaintiffs Complied in Good Faith with its Obligations of Pretrial Discovery

Rule 37(a) sanctions are available when a party fails to make a disclosure (Rule 37(a)(3)(A) , or answer a deposition question (Rule 37(a)(3)(B)(i), or fails to make a Rule 30(b)(6) designation (Rule 37(a)(3)(B)(ii), or fails to answer an interrogatory, (Rule 37(a)(3)(B)(iii), or fails to respond that an inspection be permitted or fails to permit an inspection, (Rule 37(a)(3)(B)(iv).   Rule 37(b) sanctions are available for failure to comply with a court order.  Rule 37(c) sanctions are available for failure to disclose information or identify a witness as required by Rule 26(a) or (e) or for the failure to admit request for admission submitted pursuant to Rule 36.  None of those specific circumstances occurred in this case.  Plaintiffs respectfully submit that the Motion for Sanctions is without merit because (a) there was no Order from this Court adopting the very expensive electronic protocol proposed by Plaintiff, one that would have added six months or more to the discovery process, (b) there was no stipulation between the parties to adopt such a process, (c) the Request for Production by BP West Coast Products did not require any special search terms, and (d) the "missing" records are not the business records of Plaintiffs and do not relate to the issues in the case. Rule 37(e) recognizes not every loss of electronically stored information is sanctionable and that absent exceptional circumstances, sanctions should not be imposed.

Plaintiffs do not dispute the authorities cited by BP West Coast Products at page 4, lines 2-22, and page 5, lines 1-2.  As more fully set forth in the Affidavit of Don Stevens, attached hereto as Exhibit 6, counsel for Plaintiffs took responsibility for ensuring that the business records relating to the business relationship with BP West Coast Products were preserved for this litigation.  Counsel for Plaintiffs directed the

efforts to conduct a comprehensive and appropriate document search, based upon the specific categories of information sought by BP West Coast Products in the Request for Production of Documents.  Counsel also looked at the Initial Disclosure Statement supplied by BP West Coast Products to determine what issues might arise in the case.

The attached affidavit of Bobbie Lasan, Exhibit 5, demonstrates the process that Plaintiffs and their counsel worked on together to determine how to best locate, review and produce responsive documents, thus satisfying the requirements of Rule 26, as elaborated in the cases of *Qualcomm, Inc. v. Broadcom*, Inc. 2008 US Dist. LEXIS 911, (S.D. Cal. January 7, 2008), *Knickerbocker v. Corintian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) cited by BP West Coast Products.

At all material times, the business records of the Plaintiffs were stored on a Small Business Server at the offices of Plaintiff Arizona Oil Holdings, LLC, located in Scottsdale, Arizona.  As set forth in her deposition, Bobbie Lasan organized the server into simple categories of information so that the business records could be easily accessed.  All of the documents necessary to respond to the Request for Production of Documents served by BP West Coast Products were located on the Small Business Server at the offices of Arizona Oil Holdings.  It is true that counsel for Plaintiffs did not issue a "litigation hold notice" to employees working off-site or out of state, but Plaintiffs' counsel did take reasonable steps to personally instruct the key custodians to ensure that business record documents relevant to the issues in the case would be maintained during the course of the litigation.

BP West Coast Products complains that "Plaintiffs never provided its employees with any form of written protocol regarding the proper method to find responsive documents."  (Motion, p. 7, line 2-3).  As more fully set forth in the Affidavit of Don Stevens, employees of Arizona Oil Holdings were instructed by counsel to preserve business records generated in the course of regularly conducted business activities.  On

receipt of the Request for Production, each category of item requested by BP West Coast Products was reviewed with each person charged with the responsibility for locating documents that were responsive to the plain English meaning of the documents requested by BP West Coast Products (See Exhibit 7 for assignments).  All of the documents needed to respond to the requests by BP West Coast Products were available on the Small Business Server maintained by Plaintiffs.  Plaintiffs respectfully submit that having a "written protocol" was neither necessary to ensure compliance with the Request for Production.

BP West Coast Products complains that "Plaintiffs employees were not provided any search terms for locating responsive documents, and those employees were never instructed or asked to search for electronically stored information on their home computer or any other computer that could be used in connection with Plaintiffs businesses." (Motion, p. 7, lines 4-6).  BP West Coast Products fails to identify what "search terms" would be necessary to locate documents that were responsive to the specific categories requested by the Request for Production.  The instructions provided by BP West Coast Products did not specify any specific search terms that it was interested in beyond the plain meaning of the categories of information specified in the Request for Production.

At the outset of the case, and before any substantial discovery had occurred,  BP West Coast Products could have made the written discovery request for Plaintiffs to use specific search terms in the effort to identify and produce responsive documents.  It did not do so.  For instance, in November, 2014, Ms. Conran wrote to Plaintiffs' counsel regarding alleged deficiencies in Plaintiffs' responses to the discovery requests submitted by BP West Coast Products.  Plaintiffs' counsel responded in writing and disputed the alleged deficiencies.  Ms. Conran's letter and Mr. Stevens' responses are both attached as Exhibit 8.  That exchange did not result in any of the processes the

Court provided in Paragraph 6 of the Case Management Order, or any Order from the Court regarding the dispute.  Had BP West Coast Products availed itself in November 2014 of the procedures that the Court provided, there would have been no prejudice and no delay because the issue would have been resolved in time for Plaintiffs to supplement their discovery responses.  Although BP West Coast Products bases its Motion for Sanctions on information it discovered in the few weeks before the expiration of the discovery deadline, that delay was not caused by any act or omission of Plaintiffs.  The Court should find that if BP West Coast Products had a valid complaint about the adequacy of electronic discovery, it could have and should have taken it up with the Court months ago.  BP West Coast Products should not be heard to claim prejudice when it failed to act at an earlier time.

Plaintiffs submit that the search that was done was actually broader than trying to locate documents by use of a "search term", because specific categories of documents that were requested by BP West Coast Products were reasonably clear and specific.  If BP West Coast Products had wanted Plaintiffs to use either a written protocol or specific search terms for each of the requested categories, it could have made an appropriate Rule 34 request at the time and allowed Plaintiffs the opportunity to be heard under Rule 34(b)(2). If needed, the Court would have had the opportunity to resolve the issue. In this case, Plaintiffs produced electronically stored information that had been kept in the ordinary course of business and organized and labelled such documents to correspond to the categories in the request. Nothing more was required by Rule 34.  Instead of using the available procedures in a fair and timely fashion, BP West Coast Products unfairly delayed raising these objections until discovery was closed.

BP West Coast Products also complains that "Plaintiffs let their employees and former employees do their own preservation, collection and search for documents and information with potential relevance to the claims and defenses in this case." (Motion,

p. 7, line 8-9).  This is not an accurate statement.  As described in the Affidavit of Don Stevens, the search for documents was done at the direction of counsel.  Although counsel did not personally perform the searches of the Small Business Server,  the decision by counsel to assign that responsibility to mature, reliable and trusted employees of Plaintiffs, and to instruct with them personally about what was required, and to personally review the results of that search was neither unreasonable or grossly negligent.  The documents that were responsive to the requests or related to the claims and defenses in the case were identified and produced as part of Plaintiffs' Initial Disclosure Statement as well as the Response to the Request for Production.  That Disclosure demonstrates that Plaintiffs' went far beyond the scope of the Request for Production to identify and produce documents that were relevant to the claims or defenses in this case.

BP West Coast Products complains that "Each employee self-selected what documents, including electronically stored documents, to produce in response to BPWCP's discovery requests… And each employee decided on their own whether or not to search the entire Arizona Oil Holdings server or only certain subfolders."  Notably missing from this complaint is the identification of any document requests that would have required a search of the entire server, even folders that had nothing to do with any aspect of the case.  Bobbie Lasan was the custodian administrator of the way in which information was kept on the server.  It was a logical organization that kept all similar information in the same folder. (See, Exhibit 5, Affidavit of Bobbie Lasan)  Not every scrap of information on the server would have been responsive to the Request for Production.  Mr. Scaramella, Mr. Olson, Mr. Diebler, and Ms. Lasan searched those folders, and perform such searches as were reasonably necessary to identify the specific items requested by BP West Coast Products.  There was no rule, stipulation, or order in place that required the Plaintiffs to do anything more.

BP West Coast Products complains that no keyword searches were performed on the Small Business Server.  As noted above, BP West Coast Products never specified any keywords other than the plain English meanings of the specific Requests for Production.  BP West Coast Products has failed to identify what keyword searches would have been necessary to identify the documents that BP West Coast Products now claims is so critical to their claims or defenses.  There is no reasonable basis to believe that a keyword search would have yielded any new or different documents. In fact, nothing was intentionally omitted or concealed.  Each of the individuals was given a specific assignment for specific categories of information requested by BP West Coast Products, as described in Exhibit 7 (and also provided to BP West Coast Products) regarding the topics that were searched for and by whom.  The search was neither random nor unsupervised.  The categories of information requested were readily identified and retrieved.

A. Chris Olson: Mr. Olson was tasked with responding to the financial requests in the Request for Production.  With respect to emails regarding S2K and Retalix, his communications would have been with BP West Coast Products or Nick Otter, the architect of the S2K System.  Emails and other communications between Mr. Olson and Mr. Otter and Mr. Olson and BP West Coast Products have been produced.  Mr. Otter is an agent of BP West Coast Products.  Communications to BP West Coast Products from Mr. Olson were produced or were in the possession of BP West Coast Products.

Although Mr. Olson did testify that he regularly deleted his emails, Rule 37(e), Federal Rules of Civil Procedure recognizes that:

> "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good faith operation of an electronic information system."

Anyone who has an email account will recognize that hundreds if not thousands of emails are regularly received.  Sometimes emails are between two specific people and the recipient is simply copied for information purposes.  Sometimes emails are to the recipient but copied to other people.  BP West Coast Products has no evidence that any material emails relevant to the issues in the case or to the items requested by BP West Coast Products.  In any event, Ms. Lasan testified at length about the retrieval of emails having anything to do with the subjects asked for by BP West Coast Products.

Mr. Olson testified that the "… underlying documentation, the financials that were created over a number of years… were used as a basis for the damage disclosures.  Plaintiffs produced the financial records that were requested.  Those documents summarize and total the underlying monthly data for those categories of information.  While it is true that those monthly financials were not produced to BP West Coast Products, they still exist and have not been altered in any way.  Had BP West Coast Products raised this issue when the financial documents were first produced by Plaintiffs, Plaintiffs would have had the opportunity to object or more likely to produce the monthly records for each station in a timely fashion.  There is no prejudice because BP West Coast Products subpoenaed banks and accountants and obtained financial statements, tax returns, and all information regarding the financial status of the Plaintiffs during the business relationship and during this litigation. Nothing is missing.  Nothing has been concealed.

For instance, Plaintiffs have produced and BP West Coast Products has obtained tax returns and audited financial statements from third-party accountants and auditors.  BP West Coast Products has not identified anything in the financial documents produced and obtained by it that might suggest there would be any discrepancy between the financial statements, balance sheets, or tax returns, and the monthly financials for each station that formed the basis for those final documents.  Some of the financial

1    statements were in fact "audited" by independent accountants, including those hired by

2    third parties.  It is respectfully submitted that any failure to produce many hundreds of

3    pages of monthly information for the six stations over the specified, from January 01,

4    2005 through the present was harmless and was not prejudicial to any disclosed defense

5    asserted by BP West Coast Products.

6          B.  Andy Daziani:  Mr. Daziani testified that he was involved in the process of

7    surveying the street prices for the sale of gasoline Products by competitors in Arizona

8    up until 2009.  After that time, Tracy Johnson took over the responsibility.  Both

9    witnesses testified that the final decision about the street price to be set for the sale of

10   gasoline at each station was made by Mr. Scaramella, not by Mr. Daziani or by Ms.

11   Johnson. Part of that process involved a daily survey of all of the competitor retail or

12   "street" prices in the surrounding area.  Those daily surveys were given to BP West

13   Coast Products, through its employee and agent, Joe Ritchie, who was the Franchise

14   Business Consultant for each of the stations operated by the Plaintiffs.  A hard copy of

15   those daily surveys was produced by the Plaintiffs during this litigation.  In addition,

16   emails between the Plaintiffs and Mr. Ritchie regarding street prices and the amount of

17   price support necessary to compete effectively with other gas stations in the immediate

18   area were also produced by Plaintiffs during this litigation.

19         Because Mr. Daziani had been working for the stations in the Atlanta, Georgia

20   area since 2009, and because price surveys for the entire period were available and being

21   produced, it was not obvious to Plaintiffs' counsel that Mr. Daziani had any information

22   relevant to the categories of the information specifically requested by BP West Coast

23   Products.  Counsel for Plaintiffs was not aware of the existence of personal spreadsheets

24   prepared by Mr. Daziani because they were not part of the records maintained by

25   Plaintiffs and reviewed by counsel.

26         Mr. Daziani testified during his deposition testified about a number of personal

opinions he had formed about why the stations in Georgia or Florida were losing money. He testified that the programs offered by BP in the Florida and Georgia markets caused the stations to lose money and were "cutting into our margins". (Exhibit 9, Daziani deposition, pp. 22, lines 15-25).  He testified about his personal opinion that "… In order for us to make a profit to pay our bills, we needed more profit on the fuel side… The margins that we were getting from ARCO or BP, it just was not paying our bills… We just could not make money at those low margins in the fuel." (Exhibit 9, Daziani deposition, pp. 23, lines 7-17).  He testified that he did these spreadsheets "…on my own because I was a data freak…" (Exhibit 9, Daziani deposition, pp. 24, line13-15).  Mr. Daziani did not have any information or opinions that were beneficial to BP West Coast Products, and the spreadsheets that he did on his own not part of the business records of the Plaintiffs.

Plaintiffs acknowledge that Mr. Daziani testified that he deleted emails from his personal AOL account because no one asked him to preserve them.  That was an oversight on the part of Plaintiffs' counsel, not the result of a culpable state of mind intent on depriving BP West Coast Products of valuable admissions.  Mr. Daziani managed store managers at the individual franchise sites.  He was not responsible for accounting, pricing, or financial decisions of Arizona Oil Holdings.  BP West Coast Products has not identified how any supervision communications between Mr. Daziani and individual managers of the stations about the day to day operations could be relevant or could somehow relate to some defense of BP West Coast Products.

This oversight was neither "grossly negligent" or "reckless" by either the Plaintiffs or their counsel.  It could have been easily rectified if BP West Coast Products had raised the issue before the expiration of discovery.  It is respectfully submitted that Plaintiffs fully complied with the Requests for Production.  In any event, any failure to produce Mr. Daziani's price surveys is harmless because Joe Ritchie

testified that he never relied on the gas surveys provided to him by Plaintiffs on a daily basis.  (Exhibit 10 , excerpt from Ritchie Deposition,  p. 98-99).

Immediately following Mr. Daziani's deposition, Plaintiffs produced the spreadsheets from Mr. Daziani's flash drives that related to Arizona.  The remaining information on the flash drives involved stations in Georgia and Florida which are no longer relevant to the issues in this case.  (See Exhibit 6, Affidavit of Don Stevens).  At the time that counsel for Plaintiffs was preparing the Response to the Request for Production, Mr. Daziani was working on the Florida and Georgia markets and the existence of the spreadsheets were not known to Plaintiffs' counsel.  Plaintiffs will not be calling Mr. Daziani as a witness at trial and will not use Mr. Daziani's spreadsheets as exhibits in this case.  Mr. Daziani's personal spreadsheets for Georgia and Florida were not erased or altered and can be produced if the Court deems them to be relevant. (Affidavit of Don Stevens, Exhibit 6).

With respect to Mr. Daziani's personal AOL account, it is true that his emails were deleted by him at the time he left the employment of Arizona Oil Holdings.  Any emails, however, that Mr. Daziani sent to any other person at Arizona Oil Holdings would have been captured in the emails that were retrieved from the Small Business Server in operation at the offices of Arizona Oil Holdings. Mr. Daziani was the supervisor of store managers.  He was not an officer or director of Arizona Oil Holdings. With respect to Mr. Daziani, Plaintiffs submit that there was no bad faith that has delayed or disrupted the litigation or that was done with a culpable state of mind to deprive BP West Coast Products of discoverable information.

C.  Tracy Johnson:  Plaintiffs' employees each testified that no one was assigned any titles, so the effort by BP West Coast Products to elevate Ms. Johnson's importance by calling her and "assistant general manager" and a "key employee" for Plaintiffs' Arizona operation is inaccurate.  She testified that the managers of each station did a

survey of their particular area and provided that individual survey to her.  She  testified that she transferred the information from the surveys done by the individual station managers to a spreadsheet that summarized each station so that Mr. Scaramella could review it.  She had no role in setting the street price at all.  The price spreadsheets were simply compilations of information received from store managers. (See Exhibit 11, Excerpts from Deposition of Tracy Johnson, pp. 30-32). Plaintiffs have produced all of the street price surveys prepared by Ms. Johnson and provided those to BP West Coast Products as part of the disclosure or discovery process in this case.  Plaintiffs did not produce the spreadsheets themselves, because they would total approximately 20,000 pieces of information that were accurately summarized on the reports prepared by Ms. Johnson.  Plaintiffs believe that the actual spreadsheets are available.

D. Mike Diebler:    Mr. Diebler had no role whatsoever in the operation or management of the Plaintiff sites.  He only provided technical support when needed. The attached Exhibit 7 describes the specific tasks he was asked to do.

E. Darius Ingram:  Mr. Ingram lived in Atlanta, Georgia and did no work or analysis for the Plaintiffs in Arizona. (See attached Affidavit of Don Stevens, Exhibit 6).

F.  Emails:  BP West Coast Products incorrectly claims that only emails from the Arizona Oil Holdings email accounts were retrieved.  In fact, emails from any source or file type were retrieved and converted to a "reasonably usable form" ( as permitted under the "Definitions" contained in the Request for Production of Documents served by BP West Coast Products).  Plaintiffs produced readable copies of the emails, the email string, the identification of any attachment to the email and the attachment itself. Ms. Lasan testified that the Outlook emails, for instance, could not be read in their

original form without having Outlook installed.  The Outlook emails and any other

format that could not be transferred in its original form, were printed in Adobe .pdf

format.  The emails themselves were not destroyed or otherwise altered in the process.

### 3. Sanctions are not justified in this case.

It is respectfully submitted that BP West Coast Products has not met its burden

of proof necessary to justify the imposition of sanctions for spoliation of evidence.  As

cited by BP West Coast Products in its brief at page 17, *Surowiec v. Capital Title

Agency*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011), quoting *Goodman v. Praxair

Services*, Inc. 632 F. Supp. 2d 494, 509 (D. Md. 2009).  Any loss or deletion of

information was inadvertent, and not the result of a culpable state of mind intended to

deprive BP West Coast Products with information that was necessary to its defense.

Plaintiffs concede that they had an obligation to preserve the evidence.  Plaintiffs

contend that they did so and that they acted reasonably in responding to the Request for

Production of Documents.  BP West Coast Products has identified Mr. Daziani's laptop

computer and Tracy Johnson's laptop computer as equipment that was not properly

searched.  As noted above, the spreadsheets that Mr. Daziani testified about have been

produced.  They were not destroyed or altered.  The spreadsheets that Ms. Johnson

created with the summary of information from the daily price reports was also produced

in printed form, to Joe Ritchie at the time they were prepared and again during this

litigation.

Although BP West Coast Products has complained about the failure to preserve

certain records from these individuals, BP West Coast Products is asking the Court to

speculate about what these records might have been and to draw some adverse inference that will support the defenses of BP West Coast Products.   Both of these individuals had very limited roles with respect to the claims being made by the Plaintiffs.  Neither of these individuals will be called as witnesses by the Plaintiffs.  BP West Coast Products cannot establish that any failure to preserve electronic information caused the loss of "relevant information" or that what is no unavailable would have been material to the issues in this case.

BP West Coast Products also has no evidence that the alleged failure to follow an electronic protocol in a format specified by BP West Coast Products was in violation of a stipulation or an order from the Court.  Plaintiffs have demonstrated that any deficiency in the production of underlying documents could have been easily remedied when the documents were first received by BP West Coast Products over five months ago, or by a timely Rule 34 request seeking specific electronic searches if BP West Coast Products actually needed additional searches to be performed.

Instead, BP West Coast Products complains that Plaintiffs should have implemented the electronic discovery protocol that BP West Coast Products first proposed but which was not adopted in the Courts Case Management Order.   It was reasonable for the plaintiffs to rely on the plain language of the Request for Production. Plaintiffs were not obligated to do more than what the Request for Production asked for. BP West Coast Products has not identified any gap or missing documents in what was produced, but instead asked the Court to guess about what was not produced.

There is certainly no evidence that any missing data was accompanied by a

"culpable state of mind".  All of the collection of documents to be produced in this case was done under the direction of counsel.  It was not done "haphazardly" or carelessly.  The claim by BP West Coast Products that the result of failing to follow a protocol that was never requested and never ordered must necessarily leave "… an untold number of documents uncollected and unproduced." is sheer speculation.  These parties had been doing business together for over 12 years.  All of the financial information for the individual stations was recorded on a proprietary system called Retalix, sold by BP West Coast Products to Plaintiffs  and available to BP West Coast Products had it been needed.

In short, there is no evidence that the information that has been produced by Plaintiffs is wrong, incomplete, or inaccurate.  There is no evidence from which this Court could reasonably find that the Plaintiffs were "grossly negligent" or "reckless" in responding to the Request for Production of Documents.  This is not a case where employees of the Plaintiffs were permitted to make a decision about the relevance of documents because that decision is made by Plaintiffs' counsel.  Of the thousands of documents that were produced by the Plaintiffs, BP West Coast Products has not identified any specific documents that make reference to some other document that has not been produced.

Plaintiffs respectfully submit that their production of documents, their disclosures, their responses to the discovery requests, and the deposition testimony were reasonably done and the facts do not support the imposition of sanctions, especially not the "harsh" sanctions sought by BP West Coast Products.

Dated February 17, 2015

Law Offices of Don Stevens P.C.

By: /s/ Don Stevens
    Don Stevens
    15433 N. Tatum Blvd. Suite 106
    Phoenix, AZ  85032
    Attorneys for Plaintiffs

Response electronically filed
On February 17, 2015

COPY emailed on February 17, 2015 to:

Lizabeth "Beth" Conran
David J. Simmons
Greensfelder, Hemker & Gale, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
Attorneys for Defendants

By x /s/ Don Stevens